## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| LAWRENCE MILLER,<br><br>                    Plaintiff,<br><br>v.<br><br>STARKEY LABORATORIES, INC.,<br><br>                    Defendant. | Civil No.  17-3996 (JRT/LIB)<br><br>**MEMORANDUM OPINION AND ORDER** |

David H. Redden and John A. Fabian, III, **FABIAN MAY & ANDERSON, PLLP**, 1625 Medical Arts Building, 825 Nicollet Mall, Minneapolis, MN  55402, for plaintiff.

David Bradley Olsen and Scott A. Neilson, **HENSON & EFRON, PA**, 220 South Sixth Street, Suite 1800, Minneapolis, MN  55402, for defendant.

Plaintiff Lawrence Miller brought breach of contract and promissory estoppel claims in state court against his former employer Starkey Laboratories, Inc. ("Starkey"), to enforce certain terms of his employment contract.  Starkey removed the case to federal court, arguing that the provisions at issue – together with related provisions in the contracts of other top company managers – are an Employee Retirement Income Security Act ("ERISA") pension benefit plan.  Starkey now moves to dismiss the case on the ground that Miller's state-law claims are completely preempted by ERISA.  Miller moves to remand and seeks sanctions against Starkey.  Because Starkey has not shown by a preponderance of the evidence that the contracts establish an ERISA pension plan or program, the Court must grant Miller's Motion to Remand and deny Starkey's Motion to

Dismiss as moot. However, because Starkey's legal position is not unreasonable, the Court will deny Miller's Motion for Sanctions.

## BACKGROUND

Lawrence Miller worked for Starkey Laboratories from 1987 until he was terminated on September 8, 2015. (Notice of Removal ¶ 1, Ex. B ("Compl.") ¶ 3, Aug. 28, 2017, Docket No. 1.) Miller was Starkey's Senior Vice President of Human Resources. (*Id.* ¶ 3.) On the same day Starkey that fired Miller, it also fired its President, Chief Financial Officer, Vice President of Operations, and Miller's wife Julie, an administrative assistant. (*Id.* ¶ 7.) Miller and three co-defendants are presently standing trial for allegedly fraudulent conduct involving Starkey. (*See* 3d Superseding Indictment, *United States v. Ruzicka*, Jan. 8, 2018, Criminal No. 16-246, Docket No. 298.)

Miller, a Minnesota resident, brought this case against Starkey, a Minnesota corporation, in state court. (Compl. ¶¶ 1-2.) Miller stated two state-law causes of action, both founded on Starkey's refusal to pay certain post-separation benefits: Breach of Contract and Promissory Estoppel. (*Id.* ¶¶ 9-17.) These claims are based on Miller's employment contract (the "Agreement"), dated July 1, 2006. (*Id.* ¶ 4; Decl. of David Bradley Olsen Supp. Mot. to Dismiss ("1st Olsen Decl.") ¶ 3, Ex. B ("Agreement"), Aug. 28, 2017, Docket No. 6.) The Agreement provided that Miller could only be terminated for an "important reason" (the "termination provision"), and promised a "long-term services and loyalty bonus" (the "loyalty benefit") to be paid after Miller's separation, regardless of cause (the "loyalty provision"). (Compl. ¶¶ 5-6; Agreement §§ III(1)-(2),

IX.) The loyalty benefit was to be a percentage of Miller's base salary for every year of service, to be paid in six annual installments. (Compl. ¶ 6; Agreement § IX.) Miller alleges that both the termination and loyalty provisions were breached. (Compl. ¶¶ 7-8.)

Starkey removed the case to federal court claiming federal question jurisdiction, arguing that the loyalty provision established or is part of an ERISA pension plan, therefore giving rise to complete preemption of the state-law claims. (Notice of Removal ¶¶ 5-6.) Starkey has submitted contracts of other top executives that contain related provisions. (*See* 1st Olsen Decl. ¶¶ 4-5, Exs. C-D; Decl. of David Bradley Olsen Opp. Remand Mot. ("2d Olsen Decl.") ¶¶ 4-9, Exs. F-K, Oct. 19, 2017, Docket No. 27.) Starkey filed a Motion to Dismiss for failure to state a claim, arguing that complete preemption, express preemption, and Miller's failure to exhaust his administrative remedies justify dismissal. (Mot. to Dismiss ("MTD"), Aug. 28, 2017, Docket No. 3.)

Miller timely filed a Motion to Remand, arguing that the loyalty provision is not part of an ERISA plan, but is merely a freestanding single-employee contract term. (Mot. to Remand ("Remand Mot."), Sept. 7, 2017, Docket No. 18; Mem. Supp. Remand Mot. at 1, Sept. 28, 2017, Docket No. 20.) Miller also alleges that he sought to arrange a meet-and-confer with Starkey, but its counsel did not respond. (Decl. of David H. Redden ¶ 2 & Ex. 1, Sept. 28, 2017, Docket No. 21.) Subsequently, Miller filed a Motion for Sanctions, arguing that Starkey's filings are legally frivolous and designed to delay this case until after Miller's trial. (Mot. for Sanctions ("Sanctions Mot."), Oct. 26, 2017, Docket No. 29; Mem. Supp. Sanctions Mot., Oct. 26, 2017, Docket No. 31.)

All three motions are now before the Court.

## DISCUSSION

I. **MOTION TO REMAND**

Miller moves to remand on the ground that the loyalty provision was not part of an ERISA plan. Because the Motion to Remand raises a jurisdictional question, the Court must deal with it first. If the loyalty provision was part of an ERISA plan, the Court has jurisdiction to consider Starkey's Motion to Dismiss; otherwise, remand is required.

**A. Standard of Review**

Under 28 U.S.C. § 1441, "[a] defendant's removal of a case to federal court is appropriate 'only if the action originally could have been filed there.'" *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 444 (8th Cir. 2010) (quoting *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010)). Following removal, a "plaintiff may move to remand the case if the district court lacks subject matter jurisdiction." *Id.* (citing 28 U.S.C. § 1447(c)). "[T]he defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence." *In re Prempro*, 591 F.3d at 620. If the defendant fails to meet that burden, the district court must remand the case. § 1447(c); *see Junk*, 628 F.3d at 444-45. "All doubts about federal jurisdiction should be resolved in favor of remand to state court." *In re Prempro*, 591 F.3d at 620.

The only jurisdictional basis for removal here is federal question jurisdiction. Such jurisdiction applies to actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In assessing whether federal question jurisdiction exists, the Court employs the "well-pleaded complaint rule" and looks only to the face of

the complaint. *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).  Generally, a court cannot have federal question jurisdiction based on a defense or counterclaim.  *Id.*  However, there is an exception in cases of complete preemption – where the statute "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal." *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 247 (8th Cir. 2012) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987) (holding that complete preemption in ERISA Section 502(a)(1)(B) justifies removal of certain state-law claims).

   **B.  Complete Preemption**

   "Because of complete preemption" under 29 U.S.C. § 1132, "any claim filed by a plan participant for the same relief provided under ERISA's civil enforcement provision,[1] even a claim purportedly raising only a state-law cause of action, arises under federal law and is removable to federal court." *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 907 (8th Cir. 2005) (discussing *Metro. Life*, 481 U.S. at 63-64).  The inquiry is whether the "essence" of the state-law claim is that of "a claim that could be brought under ERISA." *Ibson v. United Healthcare Servs., Inc.*, 776 F.3d 941, 945 (8th Cir. 2014).  If so, § 1132 "converts state causes of action into federal ones for purposes of determining the propriety of removal." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).  As such, the Court must determine the "essence" of Miller's state-law claims.

---

[1] "A civil action may be brought—(1) by a participant or beneficiary—. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

## C. The Loyalty Provision

ERISA defines two types of plans: "employee welfare benefit plans," also known as "welfare plans," and "employee pension benefit plans," also known as "pension plans." 29 U.S.C. § 1002(1)-(2)(A). Starkey alleges that the loyalty benefit falls into the latter category, which ERISA defines as:

> any **plan, fund, or program** which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or **as a result of surrounding circumstances**[2] such plan, fund, or program—
>
> (i) provides retirement income to employees, or
>
> (ii) results in a **deferral of income** by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

*Id.* § 1002(2)(A) (emphases added). Specifically, Starkey argues that the loyalty provision established or is part of a so-called "Top Hat" plan; that is, "a plan which is [1] unfunded and is maintained by an employer primarily for the purpose of [2] providing deferred compensation [3] for a select group of management or highly compensated employees." 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). Top Hat plans are exempted from certain ERISA requirements, but not its enforcement provisions. *Compare id. with*

---

[2] "[A] court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Harris v. Ark. Book Co.*, 794 F.2d 358, 360 (8th Cir. 1986) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)).

§ 1132. As such, claims to enforce a Top Hat plan may justify complete preemption. Miller does not dispute that the loyalty benefit fulfills these elements.

For the loyalty provision to create or be part of a Top Hat plan, however, the loyalty benefit must also fulfill the requirements of all ERISA plans. *See Dak., Minn. & E. R.R. Corp. v. Schieffer*, 648 F.3d 935, 938 n.3 (8th Cir. 2011). Miller argues that it does not meet two requirements expounded by the Eighth Circuit. First, he argues that the Agreement cannot create an ERISA benefit plan because it is an individual contract with a single employee. Second, he argues that the loyalty provision cannot be part of an ERISA benefit plan because the benefit does not require an ongoing administrative scheme. Although Miller's first argument is unavailing in light of virtually identical provisions in two other senior executive contracts, Starkey has not met its burden to show by a preponderance of the evidence that the benefits require an ongoing administrative scheme. As such, it has failed to demonstrate that the "essence" of Miller's claims could have been brought under ERISA. The Court's "doubts about federal jurisdiction sh[all] be resolved in favor of remand to state court." *In re Prempro*, 591 F.3d at 620.

### 1. Individual Contract

In the Eighth Circuit, "an individual contract providing severance benefits to a single executive employee is not an ERISA employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1)." *Schieffer*, 648 F.3d at 937-38. "Congress has never preempted state laws that regulate and enforce individual employment contracts between employers and their executives." *Id.* The court reasoned that the words "plan" and

"program" in § 1002(1) "strongly imply benefits that an employer provides to a class of employees," and that Congress's use of the plural "participants or **their** beneficiaries" is evidence of its intent that only plans that "provide[] welfare benefits to more than one person" are covered.[3] *Id.* at 938 (emphasis in original).

Miller contends that *Schieffer* holds that a single contract cannot establish an ERISA benefits plan. But the holding was limited to § 1002(1) welfare plans; the Eighth Circuit has not yet had the occasion to extend it to pension plans. And at least one district court has concluded that *Schieffer* does not apply to pension plans. *Van Gent v. St. Louis Country Club*, No. 4:08-959, 2013 WL 6197553, at *5 (E.D. Mo. Nov. 27, 2013) ("*Schieffer* is inapplicable to the case at bar because this case involves an employee pension benefit plan as defined in 29 U.S.C. § 1002(2), and the *Schieffer* Court expressly limited its holding to employee welfare benefit plans offering severance benefits, defined in § 1002(1)."). As such, *Schieffer* does not expressly foreclose Starkey's argument.

That said, the Eighth Circuit's logic naturally extends to pension plans because § 1002(2)(A) also refers to "plan" and "program" and uses the plural "employees." At least one out-of-circuit district court followed *Schieffer*'s reasoning to hold that a single contract is not a pension plan in the absence of controlling circuit precedent. *Taylor v. Univ. of the Cumberlands*, No. 6:16-109, 2017 WL 512643, at *8 (E.D. Ky. Feb. 7,

---

[3] The Eighth Circuit offers no insight into how large the class of employees must be. However, it did note that ERISA eliminated a provision in its predecessor statute that exempted plans with fewer than 26 employees, and stated that "had Congress intended to expand federal preemption to include single-employee agreements, we believe it would have done so expressly." *Id.* at 938 n.4. Thus, the answer must be between two and twenty-five.

2017).  If Miller's contract alone was at issue, *Schieffer* would create sufficient "doubts about federal jurisdiction" to justify remand.  *In re Prempro*, 591 F.3d at 620.

However, Starkey argues that the senior executive contracts – taken together – are sufficiently similar to constitute a "'program' instituted by Starkey's former president to take care of those he deemed loyal to him," and therefore together establish an ERISA pension plan.[4]  (Starkey's Mem. Opp. Pl.'s Mot. to Remand ("Remand Opp.") at 23, Oct. 19, 2017, Docket No. 26.)  As above, pension plans may be created "as a result of surrounding circumstances."  29 U.S.C. § 1002(2)(A).  "[A]ny plan, fund, or program" that either "provides retirement income" or "results in a deferral of income" may establish a pension plan.  *Id.*  A mere handful of executive contracts may suffice.  *See, e.g.*, *DuBrul v. Citrosuco N. Am., Inc.*, 892 F. Supp. 2d 892, 905 (S.D. Ohio 2012) (holding that five similar executive contracts suffice at the motion to dismiss stage).

Starkey overreaches by arguing that the contracts here created a single ERISA scheme merely because they each include some type of retirement or separation benefit – but six of the contracts, including Miller's, provide a closely-related "long-term services and loyalty" benefit.  Four of the six, including Miller's, specify that the benefit is to be

---

[4] Miller argues that the well-pleaded complaint rule forecloses consideration of the other contracts, citing *Caterpillar*, 482 U.S. at 392.  But that doctrine does not apply to cases of complete preemption.  *Id.*  A court generally has the authority to consider matters outside the pleadings to resolve jurisdictional disputes.  *See Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir. 1993) (discussing a Rule 12(b)(1) motion).  The reason is "rooted in the unique nature of the jurisdictional question."  *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).  Jurisdictional disputes are for the Court to decide.  *Id.*  "[A]ny rational mode of inquiry will do."  *Id.* at 730 (quoting *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986)).  It is rational to consider the other contracts, particularly given that Miller does not challenge their authenticity.

paid in annual installments. And three of the six, including Miller's, provide the same payment schedule. At a minimum, Miller cannot contest that his contract is unrelated to the other two with virtually-identical loyalty provisions. Because Miller does not contest that the loyalty provision meets the basic elements of a Top Hat plan, the Court finds that Starkey has shown by a preponderance of the evidence that the circumstances surrounding the three contracts are such that they collectively established a deferred-compensation program under Section 1002(2)(A).

### 2. Ongoing Administrative Scheme

When severance benefits are available to a class of employees, the Supreme Court distinguishes mere **benefits** from ERISA benefit **plans**. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11-12 (1987) (holding that preemption is only justified for "benefits whose provision by nature requires an ongoing administrative program"). Miller contends that the loyalty benefit does not require ongoing administration.

"The pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits." *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 257 (8th Cir. 1994). "Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria." *Id.*

> When determining whether payments require an ongoing administrative scheme, we consider [1] whether the payments

> are one-time lump sum payments or continuous payments, [2] whether the employer undertook any long-term obligation with respect to the payments, [3] whether the severance payments come due upon the occurrence of a single, unique event or any time that the employer terminates employees, and [4] whether the severance arrangement under review requires the employer to engage in a case-by-case review of employees.

*Crews v. Gen. Am. Life Ins. Co.*, 274 F.3d 502, 506 (8th Cir. 2001) (expounding the eponymous "*Crews* factors").

No ongoing scheme is required to administer a lump-sum payment when "there was nothing for the company to decide, no discretion for it to exercise, and nothing for it to do but write a check." *Kulinski*, 21 F.3d at 258 (noting that the employee, not the employer, had unfettered discretion to determine his eligibility for benefits); *Eide v. Grey Fox Tech. Servs. Corp.*, 329 F.3d 600, 605-06 (8th Cir. 2003) ("[B]enefits would be awarded automatically and mechanically if the specific conditions of termination were satisfied."). By contrast, an ongoing administrative scheme is required when the employer must "determine whether a particular termination was with or without cause" to determine eligibility. *Petersen v. E.F. Johnson Co.*, 366 F.3d 676, 679-80 (8th Cir. 2004) (noting that benefits "include[d] such things as the continuation of medical and dental benefits which were to be paid out over time"). This may be true even when the benefit is a lump-sum payment. *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 934-35 (8th Cir. 1999) (noting that benefits were "to be paid only to those employees who are not terminated for disciplinary reasons and who also have given excellent service to [the company] during their employment"). Thus, the fourth factor "is frequently determinative." *Rosati v.*

*Cleveland-Cliffs, Inc.*, 259 F. Supp. 2d 861, 869 (D. Minn. 2003) (quoting *Gilmore v. Silgan Plastics Corp.*, 917 F. Supp. 685, 688 (E.D. Mo. 1996) (collecting cases)).

Turning to the facts of this case, the first three *Crews* factors suggest that the loyalty benefit requires ongoing administration. The benefit is to be paid in six installments over the five years after separation. Thus, as in *Petersen*, the benefit is a continual payment imposing a long-term obligation on the employer, and, as in *Emmenegger*, a payout is triggered each time a covered employee separates. But those two cases dealt with large, long-running plans; here, by contrast, the provision covered a small number of employees for a short time. And the fourth factor – frequently determinative – strongly suggests that no ongoing administration is required. Although Starkey must undertake a case-by-case review of salary data to determine when benefits should be paid and for how much, those mechanical calculations do not require discretion. Indeed, the loyalty provision expressly forecloses Starkey from exercising discretion as to eligibility: "For purposes of this section, 'termination' shall mean any and all events causing separation of employment including voluntary and involuntary termination, death or long term disability." (1st Olsen Decl. ¶ 3, Ex. B, § IX.)[5] As such,

---

[5] Starkey claims that "[a]ll of the agreements at issue here first require the company to determine whether the employees were terminated for either an 'important reason' or other 'unforeseen circumstances," but cites as an example a "severance compensation" provision in one contract – a materially different term than the loyalty provision. (Remand Opp. at 28 & n.95.) At the motions hearing, Starkey suggested that the termination provision in Miller's contract requires Starkey to exercise discretion because it provides that the contract shall not be terminated except for "an important reason." (*See* Agreement § III.) But in light of the explicit term in the loyalty provision stating that the benefit is to be paid regardless of the cause of separation, the only impact that the severance provision could have on the eventual loyalty benefit would be on the date from which benefits are calculated and payments would start.

this case is an inverted *Emmenegger*: there, the employer's complete discretion outweighed the fact that the benefit was a lump-sum payment; here, Starkey's complete lack of discretion outweighs the fact that the benefit is to be paid over a period of years. Thus, the Court finds that Starkey has not shown by a preponderance of the evidence that the loyalty provision requires a "separate, ongoing administrative scheme." *Kulinski*, 21 F.3d at 257. In light of these doubts, the Court must grant Miller's Motion to Remand.

### D. Costs and Fees

Miller moves for an award of costs and fees associated with removal under 28 U.S.C. § 1447(c). As discussed above, Starkey justified removal on the ground that Miller's state-law claims are preempted by ERISA because the loyalty provision established or is part of an ERISA pension plan. Because the holding of *Schieffer* is limited to single-contract welfare benefit plans, and because it is not unreasonable to argue that the loyalty benefit requires an ongoing administrative scheme, the Court finds that Starkey had a good-faith basis to justify removal. As such, the Court will decline to award costs and fees.

## II. MOTION FOR SANCTIONS

Miller also moves for sanctions against Starkey on the ground that its removal and Motion to Dismiss violated Rule 11(b)(2) because no reasonable and competent attorney could conclude that the loyalty provision is part of an ERISA plan and violated Rule 11(b)(1) because the motions were filed for the improper purpose of creating unnecessary delay. "The imposition of sanctions is a serious matter and should be approached with

circumspection." *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987). The Court's findings above illustrate that Starkey's legal position was not unreasonable or incompetent; as such, the Court will decline to impose sanctions on Starkey.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Remand [Docket No. 18] is **GRANTED**.

2. Defendant's Motion to Dismiss [Docket No. 3] is **DENIED** as moot.

3. Plaintiff's Motion for Sanctions [Docket No. 29] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 2, 2018　　　　　　　　_____
at Minneapolis, Minnesota.　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　United States District Court